## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAYME JOUSSETT, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | No. 15-6318 |
| | : | |
| BANK OF AMERICA, N.A., et al., | : | |
| Defendants. | : | |

**MCHUGH, J.**                                                                    **OCTOBER 6, 2016**

### MEMORANDUM

This case involves a Philadelphia resident struggling to make his way out of the thicket that is the home foreclosure process.  After defaulting on his mortgage, the homeowner here claims he tried repeatedly to modify his loan, only to be stymied as his mortgage changed owners and servicers.  A foreclosure default judgment was ultimately entered against him and a sheriff's sale of his home scheduled.  He then sued the mortgage owners and servicers, alleging violations of numerous federal mortgage regulations and Pennsylvania's consumer protection statute.  Defendants now move to dismiss for failure to state a claim.  For the reasons below, I grant these Motions in part and deny them in part.

### I.       Background

The Real Estate Settlement Procedures Act of 1974 (RESPA), 12 U.S.C. §§ 2601–2617, is "a consumer protection statute that regulates the real estate settlement process."  *Jones v. ABN Amro Mortg. Grp., Inc.*, 606 F.3d 119, 124 (3d Cir. 2010).  Congress enacted RESPA to "insure that customers throughout the Nation are provided with greater and more timely information on the nature and costs of the settlement process and are protected from . . . certain abusive practices."  12 U.S.C. § 2601(a).  Originally under the umbrella of the Department of Housing

1

and Urban Development, RESPA's rulemaking authority was transferred to the Consumer

Financial Protection Bureau (CFPB) in 2010's Dodd–Frank Wall Street Reform and Consumer

Protection Act, Pub. L. No. 111-203, 124 Stat. 1376.  *See* 12 U.S.C. § 2617(a).  These rules are

codified at 12 C.F.R. pt. 1024 and collectively known as "Regulation X."

    In 2013, the CFPB amended Regulation X to implement new rules governing mortgage

servicing.[1]  *See generally* 78 Fed. Reg. 10,696 (Feb. 14, 2013) (effective Jan. 10, 2014).  These

new rules came after the financial crisis, but responded to problems that had long preceded it:

> Even before [the crisis], many servicers failed to provide the basic level of
> customer service that borrowers deserve, costing them money and dumping them
> into foreclosure.  Dealing with sloppy mortgage servicing became a frustrating
> nightmare.
>
> As the crisis unfolded, the problems worsened exponentially.  Servicers were
> unprepared to work with borrowers that needed help to deal with their individual
> problems.  People did not get the help or support they needed, such as timely and
> accurate information about their options for saving their homes.  Servicers failed
> to answer phone calls, routinely lost paperwork, and mishandled accounts.
> Communication and coordination were poor, leading many to think they were on
> their way to a solution, only to find that their homes had been foreclosed on and
> sold.

Richard Cordray, Director, CFPB, *Prepared Remarks of Richard Cordray at a Mortgage*

*Servicing Field Hearing* (Jan. 17, 2013).  As a result, these new rules addressed servicers'

obligations to (1) "establish reasonable policies and procedures to achieve certain delineated

objectives"; (2) "provide information about mortgage loss mitigation options to delinquent

borrowers"; (3) "establish policies and procedures for providing delinquent borrowers with

continuity of contact with servicer personnel capable of performing certain functions"; and (4)

"evaluate borrowers' applications for available loss mitigation options."  78 Fed. Reg. at 10,696.

---

[1] The CFPB at the same time made related amendments to "Regulation Z," 12 C.F.R. pt. 1026, which implements the Truth in Lending Act (TILA), 15 U.S.C. §§ 1601–1693r.  As I address below, Joussett brings two Regulation Z claims, one under 12 C.F.R. § 1026.39 (mortgage transfer disclosure requirements), and another under § 1026.41 (periodic billing statement requirements).

In 2010, Plaintiff, Jayme Joussett, took out a $424,297 mortgage to purchase a home in West Philadelphia.  A year later, the original lender assigned the mortgage to the servicing arm of Bank of America, N.A., which soon after merged into Bank of America itself.  In 2012, after Joussett defaulted on his mortgage, Bank of America brought a foreclosure action against Joussett.  Joussett quickly began submitting requests to modify his loan.  Bank of America advised Joussett that it was evaluating his loss mitigation applications, but then transferred its servicing obligations for Joussett's loan to Roundpoint Loan Servicing Corp. and assigned the loan itself to Newlands Asset Holding Trust—the current servicer and owner, respectively.

With the help of a housing counselor, Joussett continued submitting modification requests to "Defendants" (the Second Amended Complaint does not distinguish between Bank of America, Roundpoint, and Newlands), numbering in the "dozens," as well as "hundreds of pages of supporting documentation."  SAC ¶¶ 65–66; *see also* SAC Ex. D at 2 (listing documents). Defendants repeatedly advised Joussett that these documents were "stale."  SAC ¶ 65.  In August 2014, after retaining an accountant, Joussett again applied to Defendants for a modification, this time through a federal program that seeks to help homeowners avoid foreclosure through loan modification.  According to the Second Amended Complaint, only at that point, after his counselor and accountant were referred to Roundpoint instead of Bank of America, did Joussett learn that Newlands now owned his loan.

With the foreclosure action still pending, Joussett's problems continued.  He claims Defendants never "adequately" reviewed his repeated modification requests or his "written requests including but not limited to the status of his loan modification," and instead made "repeated redundant document requests."  SAC ¶¶ 72, 75.  He claims Defendants failed to provide him with access to loan servicing personnel, and "dual tracked" his case—that is,

"scheduled foreclosure sales while timely loss mitigation packages were pending."  SAC ¶ 74.
These failures, according to Joussett, amounted to a "scheme to delay" his attempts to modify his
loan and avoid foreclosure; forced him to spend needless money preparing financial documents;
caused him to forgo other remedies to save his home, such as restructuring his debt in
bankruptcy or selling his home; and led to a default judgment against him in the foreclosure
action.  SAC ¶¶ 74, 80(c).  Ultimately, a sheriff's sale of Joussett's home was scheduled—
although upon his motions, stayed twice.

       Joussett then sued Defendants in the Philadelphia Court of Common Pleas, alleging
violations of (1) Regulation X; (2) Pennsylvania's Unfair Trade Practices and Consumer
Protection Law (UTPCPL), 73 Pa. Stat. Ann. §§ 201-1 to -9.3; and (3) Regulation Z.  The state
court granted Joussett's motion to stay the sheriff's sale for a third time pending judgment in this
action.  Defendants have removed to this Court, and now move to dismiss Joussett's Second
Amended Complaint for failure to state a claim.

## II.    Standard of Review

       In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the
court must first separate the factual and legal elements of a claim, accepting as true all well-
pleaded facts while disregarding any legal conclusions.  *Fowler v. UPMC Shadyside*, 578 F.3d
203, 210 (3d Cir. 2009).  The court must then "determine whether the facts alleged in the
complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'"  *Id.* (quoting
*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

### III.    Discussion

A.  *Regulation X Claims (Count I)*

Joussett makes four Regulation X claims.  Specifically, Joussett claims Defendants violated:  1) 12 C.F.R. § 1024.36, which requires a servicer to respond to a borrower's requests for information; 2) § 1024.38, which requires a servicer to adhere to certain general policies and procedures; (3) § 1024.40, which requires a servicer to provide continuous contact to assist a delinquent borrower; and (4) § 1024.41, which requires a servicer to follow certain loss mitigation procedures.[2]  Before I consider each claim, I note that each of these requirements applies only to "servicers."  RESPA defines "servicer" as "the person responsible for servicing of a loan (including the person who makes or holds a loan if such person also services the loan)," 12 U.S.C. § 2605(i)(2), and "servicing" as "receiving any schedule periodic payments from a borrower pursuant to the terms of any loan," *id.* § 2605(i)(3).  So these requirements apply only to Bank of America and Roundpoint, and not to Newlands, the owner of Joussett's mortgage. Joussett's Regulation X claims against Newlands therefore will be dismissed.[3]  Both for convenience and because Joussett does so, in analyzing the Regulation X claims I will refer to Bank of America and Roundpoint together as "Defendants."

1.  *Requests for Information (§ 1024.36)*

Section 1024.36(d) requires a servicer to respond within 30 days to a borrower's request for information either by (1) "[p]roviding the borrower with the requested information and

---

[2] Regulations that the CFPB implements pursuant to section 6 of RESPA are privately enforceable.  12 U.S.C. § 2605(f).  Because CFPB implemented §§ 1024.36 and 1024.41 through section 6, *see* 78 Fed. Reg. at 10,753, 10,823, Joussett may maintain suit for violations of those regulations.  But, as I address below, because the CFPB deliberately chose not to implement §§ 1024.38 and 1024.40 through section 6, Joussett may not maintain suit for violations of those regulations.

[3] Unless otherwise noted, all claims dismissed are done so with leave to amend.  *See Phillips v. County of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008) ("[I]f a complaint is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile.").

contact information, including a telephone number, for further assistance in writing," or (2) "[c]onducting a reasonable search for the requested information and providing the borrower with a written notification that states that the servicer has determined that the requested information is not available." These requirements, however, only apply to a "written request for information from a borrower that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and states the information the borrower is requesting with respect to the borrower's mortgage loan." 12 C.F.R. § 1024.36(a). One type of such a covered request is a "qualified written request that requests information relating to the servicing of the mortgage loan." *Id.*

Joussett claims "[f]rom early 2012 until the present, Plaintiff has been submitting requests for modification and supporting documents," numbering in the "dozens," and "Defendants failed to respond to written requests made by Plaintiff, his housing counselor and accountant including but not limited to the status of his loan modification." SAC ¶¶ 64–65, 72. In support of this, he points to a list of financial and mortgage-related documents his accountant sent to Defendants between August 2014 and July 2015, all of which seem to relate to his "Request for Modification Application" sent to Bank of America in August 2014.[4] SAC Ex. D at 2. In response, Defendants argue first that an inquiry about loan modification status is not a "qualified written request" and thus not a covered request under § 1024.36(a), and second that Joussett's allegations are in any event conclusory because he fails adequately to identify any specific written request or who sent what to whom and when. Though I reject Defendants' first argument, I agree that the Second Amended Complaint does not adequately set forth a § 1024.36 claim.

---

[4] Of the 23 other entries on this list, only one that was sent to any Defendant is labeled a "Request"—a "Request for Postponement of Loan Modification" sent to Roundpoint on April 6, 2015.

As an initial matter, Defendants are incorrect as to the scope of § 1024.36(a).  It is not limited to requests for information relating to the *servicing* of a loan.  Rather, § 1024.36(a) provides that a qualified written request is merely *one type* of covered written request for information.  *See* 12 C.F.R. § 1024.36(a) ("A servicer shall comply with the requirements of this section for any written request for information . . . . A qualified written request that requests information relating to the servicing of the mortgage loan is a request for information for purposes of this section[.]").  The CFPB itself explained that it wrote the regulation expansively to encompass cases such as this.  *See* 78 Fed. Reg. at 10,752–53 ("[T]he Bureau believed that it served the interests of borrowers and servicers alike to establish a uniform regulatory regime . . . applicable to borrower requests for information relating to their mortgage loan *irrespective of whether such requests were made in the form of a qualified written request*." (emphasis added)).

Defendants' reliance on *Smallwood v. Bank of America, N.A.*, No. 15-336, 2015 WL 7736875, at *6–7 (S.D. Ohio Dec. 1, 2015), is misplaced, because that case focused on RESPA's *statutory* provisions, and not the rules the CFPB was empowered to issue.  Ordinarily, regulations issued under a statute would be limited by the terms of the statute itself, but here, the CFPB created an alternative path for consumers to follow.  Section 1024.36(a) explicitly covers *more* than just requests relating to loan servicing, extending to "any written request for information from a borrower."  I therefore join my former colleague Judge Buckwalter in holding that § 1024.36(a) encompasses requests relating to loan modification such as those involved here.  *See Wilson v. Bank of Am., N.A.*, 48 F. Supp. 3d 787, 806–07 (E.D. Pa. 2014).

Nonetheless, I find Joussett's allegations inadequate to state a claim under § 1024.36.  The problem here is the proverbial "square peg–round hole."  The regulation on which Joussett relies deals with informational requests, which are related to but not the same as modification

requests.  To state a claim for failure to respond to requests for information, a plaintiff must

show "(1) the defendant is a loan servicer, (2) the plaintiff sent the defendant a valid [request

under § 1024.36], (3) the defendant failed adequately to respond within the statutory period, and

(4) the plaintiff is entitled to actual or statutory damages."  *Katica v. Specialized Loan Servicing,*

*LLC*, No. 15-2957, 2015 WL 10765188, at *5 (N.D. Ga. Dec. 1, 2015).  While a plaintiff need

not attach to his complaint copies of his requests, he must "plead facts sufficient to show that the

written requests provided the detail necessary to qualify under RESPA," *id.*, and that he "sent his

requests to the defendant," *Binder v. Weststar Mortg., Inc.*, No. 14-7073, 2016 WL 3762710, at

*6 (E.D. Pa. July 13, 2016) (Pratter, J.).  Both Defendants are loan servicers,[5] and Joussett

sufficiently alleges damages from forgoing other remedies to save his home while awaiting

Defendants' responses, but it is not at all clear that his communications consisted of "requests for

information" under § 1024.36.

     In the list of documents Joussett's accountant sent Defendants, only two are even labeled

"requests":  (1) the August 8, 2014, Request for Modification Application to Bank of America;

and (2) the April 6, 2015, Request for Postponement of Loan Modification to Roundpoint.  I will

assume that, as § 1024.36 requires, each request was sent and received, and included information

that identified Joussett and his account.  But neither request seems to be a "request *for*

*information*" as an ordinary linguistic matter, and Joussett fails to make any showing that either

request identified "the information the borrower is requesting with respect to the borrower's

mortgage loan"—the necessary touchstone of a § 1024.36 claim.

     There is little case law applying § 1024.36, but Joussett's conclusory allegations here

suffer badly by comparison to other cases that have withstood motions to dismiss.  *See, e.g.*,

---

[5] I note that it remains unclear whether Bank of America transferred to Roundpoint responsibility for servicing
Joussett's mortgage prior to § 1024.36's January 10, 2014, effective date.

*Katica*, 2015 WL 10765188, at *5 (not dismissing where plaintiff alleged she "sent a letter to [defendant] dated March 20, 2015 . . . , wherein Plaintiff . . . requested information and records regarding the payment history, fines, charges, fees and calculation and breakdown of the debt"); *Wilson*, 48 F. Supp. 3d at 806 (not dismissing where plaintiff alleged she requested "copies of the servicing logs . . . , audio files of telephone calls . . . , documents submitted by Plaintiff in support of her request for loan modification, property inspection reports, and invoices from Defendant's foreclosure firm").

The Second Amended Complaint adequately alleges that requests for *modification* were submitted, but fails to allege that Joussett's communications with Defendants constituted requests for information as defined by § 1024.36.[6] Accordingly, this claim will be dismissed.

2.   *General Policies and Procedures (§ 1024.38)*

Section 1024.38 requires a servicer to "maintain policies and procedures that are reasonably designed to achieve" certain pro-borrower objectives. Joussett does not bring a standalone § 1024.38 claim, but instead alleges that Defendants' failure to follow § 1024.38's policies and procedures constituted a violation of the UTPCPL. While I address the UTPCPL claim separately below, for the sake of completeness I also analyze § 1024.38 as its own claim.[7]

The analysis ends rather quickly, however, because there is no private right of action to enforce § 1024.38. The CFPB explicitly crafted the regulation not to provide for private enforcement. *See* 78 Fed. Reg. at 10,697–98 ("The Bureau . . . will be able . . . to assure

---

[6] The vague description of the nature of the communications raises a different concern as well—the inability to evaluate the adequacy of a loan servicer's response. A "general allegation that [the defendant] failed to provide complete responses to the request does not state a claim" because it fails to put the defendant "on notice as to what [it] responded with and how it failed to respond." *Watson v. Bank of Am., N.A.*, No. 16-513, 2016 WL 3552061, at *11 (S.D. Cal. June 30, 2016).

[7] I do so because, apart from attempting to use § 1024.38 as a bootstrap to recover under the UTPCPL, Joussett also vaguely brings claims under "several sections" of Regulation X, "including *but not limited to* §§ 1024.36, 1024.40, and 1024.41." SAC ¶ 71 (emphasis added). I loosely interpret this to include a standalone § 1024.38 claim.

compliance with these requirements but there will not be a private right of action to enforce these provisions.").  Other courts that have addressed § 1024.38 claims have adopted the CFPB's interpretation.  *See, e.g.*, *Austerberry v. Wells Fargo Home Mortg.*, No. 15-13297, 2015 WL 8031857, at *5 (E.D. Mich. Dec. 7, 2015) ("[W]hile Plaintiff is protected by §1024.38[], she lacks a private right of action to enforce [it]."); *Smith v. Nationstar Mortg.*, No. 15-13019, 2015 WL 7180473, at *4 (E.D. Mich. Nov. 16, 2015) (same).  I join them, and find that Joussett's § 1024.38 claim fails for lack of a private right of action.

Joussett correctly counters that section 6 of RESPA does provide for a private right of action.  *See* 12 U.S.C. § 2605(f) ("Whoever fails to comply with any provision of this section shall be liable to the borrower[.]").  And "Congress may . . . explicitly establish a private right of action to enforce regulations" made pursuant to a statutory program.  *Three Rivers Ctr. for Indep. Living v. Hous. Auth.*, 382 F.3d 412, 423 (3d Cir. 2004).  Indeed, section 6 is the basis for Joussett's § 1024.36 and § 1024.41 claims.

But that only gets Joussett so far, for "[t]he inquiry becomes more complicated . . . when a private party seeks to enforce a regulation an agency promulgates pursuant to a statute that does not contain an express right of action."  *Id.* at 423.  Here, the CFPB deliberately avoided using section 6 as its authority to issue § 1024.38.  *See* 78 Fed. Reg. at 10,779 ("[T]he Bureau no longer relies on its authorities under section 6 of RESPA to issue § 1024.38.  Instead, the Bureau is adopting § 1024.38 pursuant to its authority under section 19(a) of RESPA."); *id.* (noting that the CFPB also relied on its authority under sections 1022(b) and 1032(a) of Dodd–Frank).  Section 19(a) of RESPA and sections 1022(b) and 1032(a) of Dodd–Frank are merely general grants of rulemaking authority to the CFPB—and none contains a private right of action.  *See* 12 U.S.C. §§ 2617(a), 5512(b), 5532(a).  Because with limited exceptions "private rights of action

to enforce federal law must be created by Congress," *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001), Joussett's § 1024.38 claim fails and will be dismissed without leave to amend.

   3.   *Continuous Contact (§ 1024.40)*

   Section 1024.40's continuous-contact requirement, in plain terms, requires a servicer to be reasonably accessible and helpful to a delinquent borrower.  Joussett claims "Defendants failed to provide prompt access to Plaintiff, his housing counselor and accountant documents and servicer personnel that are assigned to assist the borrower," in violation of § 1024.40.  SAC ¶ 73. But this claim also fails for lack of a private right of action.  As with § 1024.38, the CFPB crafted § 1024.40 so that it would not be privately enforceable, 78 Fed. Reg. at 10,698, and issued § 1024.40 pursuant to general rulemaking authority under section 19(a) of RESPA, *id.* at 10,808–09.  Other courts have adopted the CFPB's interpretation.  *See, e.g.*, *Brown v. Bank of N.Y. Mellon*, No. 16-194, 2016 WL 2726645, at *2 (E.D. Va. May 9, 2016) ("[D]efendants correctly argue that . . . 1024.40 do[es] not explicitly provide a cause of action to private individuals."); *Schmidt v. PennyMac Loan Servs., LLC*, 106 F. Supp. 3d 859, 867 (E.D. Mich. 2015) ("[N]o private cause of action is available to enforce 12 C.F.R. § 1024.40.").  I find them persuasive, and therefore Joussett's § 1024.40 claim will be dismissed without leave to amend.

   4.   *Loss Mitigation Procedures (§ 1024.41)*

   As relevant here, § 1024.41 imposes two sets of requirements upon a servicer following receipt of a borrower's loss mitigation application.  First, the servicer must determine whether the application is complete—that is, whether the "servicer has received all the information that the servicer requires from a borrower in evaluating applications for the loss mitigation options available."  12 C.F.R. § 1024.41(b).  If the application is received at least 45 days prior to a foreclosure sale, then within 5 days the servicer must acknowledge receipt (if the application is

complete) or provide notice of what documents are needed to make it complete (if it is not).  *Id.* § 1024.1(b)(2)(i).  If a complete application is received at least 37 days prior to a foreclosure sale, then within 30 days the servicer shall evaluate the borrower's loss mitigation options and so notify the borrower.  *Id.* § 1024.41(c)(1).  In either case, if an application is incomplete, the servicer "shall exercise reasonable diligence in obtaining documents and information to complete" it.  *Id.* § 1024.41(b)(1).  Second, if the application becomes complete after foreclosure proceedings have begun but more than 37 days before the foreclosure sale, the servicer must neither move for foreclosure judgment or order of sale nor conduct a sale.  *See id.* § 1024.41(g) (with exceptions not relevant here).

Joussett's § 1024.41 allegations are broad.  He claims Defendants:  1) failed to "acknowledge receipt of the loss mitigation application or make an advisement of what was required to make the submission complete," Br. Opp. to R&N 7; 2) failed to "adequately review" what he did submit and instead made "repeated redundant document requests," SAC ¶ 75; and 3) "scheduled foreclosure sales while timely loss mitigation packages were pending," SAC ¶ 74. Defendants respond that Joussett never once claims he ever submitted a complete application, or indeed *any* application at least 37 days before a foreclosure sale.  And in any event, Defendants argue, Joussett has suffered no harm because the November 2015 foreclosure sale has been stayed pending judgment in this case.

On the issue of harm, Defendants' argument is unpersuasive, because Joussett alleges that Defendants moved for a default judgment and an order of sale in the foreclosure action.  These are cognizable harms under § 1024.41(g)'s dual-tracking provision, which prohibits the mere "*mov[ing]* for foreclosure judgment or order of sale" while a complete and timely loss mitigation application is pending.  12 C.F.R. § 1024.41(g) (emphasis added); *see also* 78 Fed. Reg. at

10,819 ("[T]he Bureau has clarified that proceeding to a foreclosure judgment includes filing a dispositive motion, such as a motion for a default judgment . . . , which may result in the issuance of a foreclosure judgment.").  Defendants cite *Wenegieme v. Bayview Loan Servicing*, No. 14-9137, 2015 WL 2151822, at *2 (S.D.N.Y. May 7, 2015), for the proposition that something more than foreclosure is needed to establish damages.  I find that case distinguishable, because it was an action for injunctive relief.  Here, Joussett alleges damages from losing other potential ways to save his home, as well as the costs of preparing redundant documents and contesting multiple sheriff's sales.

Nonetheless, Joussett's claim fails because he does not allege that he filed a timely application.  The protections of § 1024.41 do not apply unless a servicer receives a loss mitigation application, complete or not, at least 37 days prior to a scheduled foreclosure sale. *See* 12 C.F.R. § 1024.1(b)(2) (45 days for receipt-and-review requirements), (c)(1) (37 days for evaluate-and-notify requirements), (g) (37 days for dual-tracking prohibition).  Thus, to trigger any of these requirements, a plaintiff must allege that he submitted a timely application.  *See Gresham v. Wells Fargo Bank, N.A.*, 642 F. App'x 355, 359 (5th Cir. 2016) (failure to state claim where plaintiff "did not plead . . . that he submitted a complete loss mitigation application more than 37 days before the . . . foreclosure sale"); *Burns*, 2015 WL 4903422, at *2 (same). Though Joussett alleges he submitted requests for modification—that is, loss mitigation applications—both prior to and on August 8, 2014, he does not allege that any of these requests was sent at least 37 days before a scheduled foreclosure sale.  His Second Amended Complaint does not mention a foreclosure sale at all, let alone a date for one.  While Joussett later notes that he "had to stay the foreclosure sale three times," Br. Opp. to R&N 9, the last of which was scheduled for November 10, 2015, he does not say when the initial sale was scheduled for.

Without this date and the dates of any requests for modification made between § 1024.41's January 10, 2014, effective date and August 8, 2014, Joussett's § 1024.41 claim is deficient and will be dismissed.

     B.  *UTPCPL Claim (Count II)*

     Joussett additionally claims the "conduct of Defendants constituted an 'unfair or deceptive practice' within the meaning of the UTPCPL." SAC ¶ 80. The gist of this claim is that Defendants' failure to review Joussett's loss mitigation submissions was "fraudulent and deceptive conduct that created a likelihood of confusion and caused [Joussett] ascertainable loss in the form of causing default judgment and loss of opportunity to restructure debt in bankruptcy." SAC ¶ 80(b). Joussett claims that by failing to review his submissions, "Defendants represented the transaction as having characteristics it did not have for purposes of deceit" and "engaged in a scheme to delay" his loan modification and "harass" him for over three years. SAC ¶ 80(a), (c).

     "The UTPCPL is Pennsylvania's consumer protection law and seeks to prevent '[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.'" *Bennett v. A.T. Masterpiece Homes at Broadsprings, LLC*, 40 A.3d 145, 151 (Pa. Super. Ct. 2012) (alteration in original) (quoting 73 Pa. Stat. Ann. § 201-3). The UTPCPL's "catchall" provision permits "a private right of action against a person '[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.'" *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 498 (3d Cir. 2013) (alteration in original) (quoting 73 Pa. Stat. Ann. § 201-2(4)(xxi)). It is the catchall provision on which Joussett bases his claim.

To state a claim under the catchall provision, a plaintiff must plead sufficient facts to support a claim for either fraud or deception. *Bennett*, 40 A.3d at 155–56. Because Joussett does not meet that burden, his UTPCPL claim fails. Consider fraud first. A plaintiff claiming fraud must allege "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance." *Gibbs v. Ernst*, 538 Pa. 193, 207, 647 A.2d 882, 889 (1994). Moreover, Federal Rule of Civil Procedure 9(b) requires that fraud be pled with particularity, "with all of the essential background that would accompany 'the first paragraph of any newspaper story'—that is, the 'who, what, when, where, and how' of the events at issue." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002) (citation omitted).

Joussett's meager fraud allegations fall far short of this standard. He claims only that "Defendants [mis]represented the transaction" and "engaged in fraudulent . . . conduct." Nowhere in his pleadings or briefs does he identify which specific Defendants, transaction, representation, or conduct he is referring to. I am unable to make out a plausible fraud claim.

Fraud aside, a plaintiff may also allege sufficient facts to support a deception claim. While a deception claim need not satisfy Rule 9(b)'s particularity requirement, a plaintiff must show (1) "a deceptive act, that is conduct that is likely to deceive a consumer acting reasonable under similar circumstances"; (2) "justifiable reliance, in other words that he justifiably bought the product in the first place (or engaged in some other detrimental activity) because of the defendants' misrepresentation or deceptive conduct"; and (3) "that this justifiable reliance caused

ascertainable loss." *Vassalotti v. Wells Fargo Bank, N.A.*, 732 F. Supp. 2d 503, 510–11 (E.D. Pa. 2010) (Brody, J.) (citation omitted).

Joussett fares no better here.  The full extent of his deception allegations is that "Defendants [mis]represented the transaction . . . for purposes of deceit" and "engaged in . . . deceptive conduct."  It is again unclear which specific acts or conduct he is referring to.  To the extent that Joussett elsewhere identifies certain acts or conduct by Defendants, he neither shows nor even claims there was anything false or misleading about them.  *Cf. Belmont*, 708 F.3d at 498 (deceptive conduct requires "knowledge of the falsity of one's statements or the misleading quality of one's conduct").  Joussett thus also fails to state a deception claim.

Joussett offers two final arguments.  First, he points to *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547 (7th Cir. 2012), for the proposition that "even where no private right of action exists through federal statutes [(as with Joussett's § 1024.38 claim)], the lack of a private right of action does not foreclose the possibility of state-law claims, even if such claims are rooted in federal law."  Br. Opp. to R&N 8.  I do not disagree, but that does not take Joussett very far.  *Wigod* merely found that federal mortgage law did not preempt state law consumer fraud claims similar to Joussett's UTPCPL claim.  673 F.3d at 576.  It did not relieve the plaintiff from its burden of adequately pleading those state law claims.  Here, the issue is not preemption, but rather Joussett's failure to plead adequately a UTPCPL claim.

Second, Joussett claims the repeated stays of the foreclosure sale on his home are "prima facie evidence" of "an unlawful act or practice" under the UTPCPL.  Br. Opp. to R&N 9.  But the UTPCPL provision he cites says only that any "order of the court *made under section 4 of this act* shall be prima facie evidence . . . that the defendant used or employed acts or practices declared unlawful."  73 Pa. Stat. Ann. § 201-9.2(b) (emphasis added) (footnote omitted).

Because Joussett does not claim that any of the stays of the foreclosure sale on his home was pursuant to the UTPCPL, this argument fails.  Joussett's UTPCPL claim will be dismissed.

      C.  *Regulation Z Claims (Count III)*

      Joussett also makes two Regulation Z claims.[8]  First, he claims Defendants violated Regulation Z's mortgage transfer disclosure requirements, 12 C.F.R. § 1026.39, by failing properly and timely to notify him when Bank of America transferred his mortgage to Newland.  As a threshold matter, these disclosure requirements only apply to a person who:

> becomes the owner of an existing mortgage loan by acquiring legal title to the debt obligation, whether through a purchase, assignment or other transfer, and who acquires more than one mortgage loan in any twelve-month period.  For purposes of this section, a servicer of a mortgage loan shall not be treated as the owner of the obligation if the servicer holds title to the loan, or title is assigned to the servicer, solely for the administrative convenience of the servicer in servicing the obligation.

*Id.* § 1026.39(a)(1).  These requirements thus do not apply to Bank of America or Roundpoint.  Bank of America was the initial owner of the mortgage, and Roundpoint is only a servicer without title.  The disclosure claims against Bank of America and Roundpoint will be dismissed.

      The remaining disclosure claim against Newlands, while inartfully phrased, is sufficiently pled.  Section 1026.39 provides that when a mortgage is transferred, the new owner must disclose to the borrower in writing certain information, namely notice of the transfer and the new owner's contact information.  *Id.* § 1026.39(d)(1).  This disclosure must occur "on or before the 30th calendar day following the date of the transfer."  *Id.* § 1026.39(b).  Defendants argue, and I recognize, that Joussett's claim is relatively sparse.  *See* SAC ¶ 72 ("Plaintiff's mortgage was recently transferred or assigned to Newland without notice to Plaintiff.")  But I will not require a

---

[8] TILA provides for a private right of action against creditors for violations of Regulation Z.  15 U.S.C. § 1640(a); *Purcell v. Universal Bank, N.A.*, No. 01-2678, 2003 WL 1962376, at *3 n.2 (E.D. Pa. Apr. 28, 2003) (Van Antwerpen, J.) ("[Plaintiff] responds that where there is a statutory 'private attorney general' scheme of enforcement for the Truth in Lending Act, regulations concerning the conduct of creditors would confer a similar right of action. We agree with Plaintiff's position." (citations omitted)).

plaintiff bringing a lack-of-disclosure claim to plead specifics about information he alleges was not disclosed.  At the Rule 12(b)(6) stage, I am asked only whether I can "draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678, and here I can.  Joussett's § 1026.39 claim against Newlands will remain.

Second, Joussett claims "Defendants did not provide periodic statements that contained information required under Regulation Z."  SAC ¶ 94.  Joussett seems to be referring to Regulation Z's requirement that a servicer, creditor, or assignee provide the borrower with periodic billing statements.  12 C.F.R. § 1026.41.  While this claim is also somewhat lacking in detail, it will survive for largely the same reasons as the § 1026.39 claim.

## IV.    Conclusion

Joussett's UTPCPL claim and Regulation X claims are dismissed (the § 1024.38 and § 1024.40 claims with prejudice).  His Regulation Z claims remain.  An appropriate order follows.

_____/s/ Gerald Austin McHugh_
United States District Judge